**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 22-cv-03112-REB-SKC

JEFF ZEBRASKY,

     Plaintiff,

v.

MONTGOMERY MUTUAL INSURANCE COMPANY,

     Defendant.

---

**ORDER GRANTING MOTION TO DISMISS**

---

**Blackburn, J.**

     This matter is before me on **Defendant Montgomery Mutual Insurance Company's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed R. Civ. P. 12(b)(2)** [#14][1] filed December 15, 2022.  The plaintiff filed a response [#15], and the defendant filed a reply [#21].  The defendant, Montgomery Mutual Insurance Company, moves under Fed. R. Civ. P. 12(b)(2) to dismiss the claims against it for lack of personal jurisdiction. I grant the motion.

**I.  STANDARD OF REVIEW**

     The plaintiff bears the burden of establishing personal jurisdiction over a defendant. ***Behagen v. Amateur Basketball Ass'n of the United States***, 744 F.2d 731, 733 (10th Cir. 1984). Before trial, the plaintiff need only make a *prima facie* showing of jurisdiction. ***Id***. The court accepts the well-pled allegations (namely the

---

[1]  "[#14]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

plausible, nonconclusory, and nonspeculative facts) of the operative pleading as true to determine whether the plaintiff has made a prima facie showing that the defendants are subject to the personal jurisdiction of the court. ***Dudnikov v. Chalk & Vermillion Fine Arts, Inc.***, 514 F.3d 1063, 1070 (10th Cir. 2008). The court "may also consider affidavits and other written materials submitted by the parties." ***Impact Prods., Inc. v. Impact Prods., LLC***, 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004). However, any factual disputes are resolved in the plaintiff's favor. ***Benton v. Cameco Corp.***, 375 F.3d 1070, 1074-75 (10th Cir. 2004).

The exercise of personal jurisdiction over a nonresident defendant must satisfy the requirements of the forum state's long-arm statute as well as constitutional due process requirements. ***Doe v. Nat'l Med. Servs.***, 974 F.2d 143, 145 (10th Cir. 1992). Colorado's long-arm statute "is to be interpreted as extending jurisdiction of our state courts to the fullest extent permitted by the due process clause of the United States Constitution." ***Mr. Steak, Inc. v. Dist. Court In & For Second Judicial Dist.***, 194 Colo. 519, 521 (1978). Therefore, if jurisdiction is consistent with the Due Process Clause, then Colorado's long-arm statute authorizes jurisdiction over a nonresident defendant.

Under the Due Process Clause of the Fourteenth Amendment, personal jurisdiction may not be asserted over a party unless that party has sufficient "minimum contacts" with the state such that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice." ***Helicopteros Nacionales De Columbia, S.A. v. Hall***, 466 U.S. 408, 414 (1984) (quoting ***Int'l Shoe Co. v. Washington***, 326 U.S. 310, 316 (1945)). The Due Process Clause "does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or

2

relations." ***International Shoe Co. v. Washington***, 326 U.S. 310, 319 (1945). "Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." ***World-Wide Volkswagen Corp. v. Woodson***, 444 U.S. 286, 294 (1980).

Specific jurisdiction is proper when the defendant's contacts with the forum state arise from, or are directly related to, the claims of the plaintiff. General jurisdiction exists when the defendant has continuous and systematic contacts with the forum state, even if those contacts are unrelated to the claims of the plaintiff.

## II.  BACKGROUND

The plaintiff, Jeff Zebrasky, was a passenger in a car driven by William Redford when the car was rear-ended on or about July 23, 2020. The rear-end collision happened in Denver, Colorado. The at fault driver, Marcel Budavari, was driving the car that rear-ended the Zebrasky car. The negligence of Mr. Budavari was the sole cause of the accident. Mr. Zebrasky reached a settlement with Geico, the liability insurer for Mr. Budavari. Geico paid Mr. Zebrasky the liability limit of the Geico policy, 25,000 dollars.

Mr. Zebrasky claims the 25,000 dollar settlement with Geico is not adequate to compensate him for all of the injuries, damages, and losses he suffered in the car accident. He seeks insurance benefits from the defendant, Montgomery Mutual Insurance Company, based on a provision in a Montgomery policy which provides underinsured motorist (UIM) coverage for the car driven by William Redford at the time

of the accident.  He alleges Montgomery has failed to provide UIM coverage.  Based on the alleged failure to provide UIM coverage, Mr. Zebrasky alleges claims for breach of contract, unreasonable delay or denial of benefits, and bad faith breach of insurance contract.

In support of its motion to dismiss [#14], Montgomery filed the Affidavit of Stephen Christo [#14-1] (Christo Affidavit).  The Montgomery policy in question was issued in Virginia to Karen Redford and Mason Redford.  *Christo Affidavit* [#14-1], ¶ 4. When the insurance policy was issued, Karen and Mason Redford had a Virginia address.  *Id*.  Karen and Mason Redford are the parents of William Redford, the driver of the car at the time of the accident.  *Id*., ¶¶ 3-4.  William Redford is listed as a driver on the policy.  *Christo Affidavit* [#14-1], Exhibit A (Montgomery Policy) [#14-2], CM/ECF p. 2.  Although every page of the policy shows the name "Liberty Mutual Insurance" in the top right corner, the penultimate page of the policy amends the policy to make Montgomery Mutual Insurance Company the insurer, in place of any entity with "Liberty Mutual" in its name. *Montgomery Policy* [#14-2], CM/ECF p. 45.

Montgomery is incorporated under the laws of Massachusetts and maintains its principal place of business in Boston, Massachusetts.  *Christo Affidavit* [#14-1], ¶7. Montgomery is licensed to conduct insurance business in about twelve states, including Virginia. *Id*., ¶8.  Montgomery Mutual is not licensed as an insurer in Colorado and is not authorized to conduct insurance business in Colorado. *Id*., ¶9. Montgomery Mutual is not registered to conduct business in Colorado and has no registered agent in Colorado. *Id*., ¶10.  Montgomery does not solicit, initiate, direct, or conduct any business activities in Colorado. *Id*., ¶11.   Montgomery does not have offices, affiliates, agents, or employees in Colorado.  *Id*., ¶13. Montgomery has never had offices or

business operations in Colorado and has never directly owned or operated any business incorporated in or with its principal place of business in Colorado.  *Id*., ¶12.

Mr. Zebrasky does not dispute any of these facts, except he contends Montgomery has conducted business with him in Colorado and has committed a tort against him in Colorado.  The car crash occurred in Denver, Colorado.  Mr. Zebrasky received medical treatment for his injuries in Colorado and he was billed for those treatments by Colorado medical providers.  Mr. Zebrasky made a claim with Montgomery and sent his medical bills to Montgomery.  Allegedly, Montgomery unilaterally and improperly repriced the medical bills Mr. Zebrasky submitted to Montgomery.  Based on the unilateral repricing, Mr. Zebrasky alleges, Montgomery declined to pay anything to Mr. Zebrasky for UIM benefits.  "This unilateral repricing constitutes the acts that form the basis for this lawsuit and, more specifically, the bad-faith conduct Mr. Zebrasky is alleging to have taken place."  *Response* [#15], p. 7.  The refusal to pay UIM benefits, Mr. Zebrasky claims, caused injury to Mr. Zebrasky in Colorado.

In his response [#15], Mr. Zebrasky relies solely on the correspondence Montgomery maintained with Mr. Zebarsky, who was located in Colorado, concerning the UIM claim of  Mr. Zebrasky.  Mr. Zebrasky relies on specific jurisdiction and does not assert that Montgomery is covered by general jurisdiction.

### III.  ANALYSIS

In this case, the record does not show Montgomery has any contacts with Colorado, except for its correspondence directed to Mr. Zebrasky in Colorado concerning Mr. Zebrasky's UIM claim.  That correspondence is not sufficient to establish personal jurisdiction in Colorado over Montgomery.

The minimum contacts requirement is the litmus test of personal jurisdiction and due process guarantees under the Constitution of the United States.  ***Scheuer v. District Court, In and For City and County of Denver***, 684 P.2d 249, 251 (1984).  To be subject to personal jurisdiction in Colorado, a non-resident defendant "must commit some act by which it 'purposefully avails itself of the privilege of conducting activities' in Colorado . . . ."  ***Id***.

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

***Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 474–75 (1985).   "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'"  ***Id***. at 475 (citations omitted).

In this case, the fact that Montgomery communicated with Mr. Zebrasky in Colorado arose from the decision of William Redford, a driver listed on the Montgomery policy, to drive the insured car in Colorado.  In Colorado, Mr. Redford chose to drive with Mr. Zebrasky as a passenger and Mr. Zebrasky chose to be a passenger in the car.  Fortuitously, they were rear-ended in Colorado with Mr. Zebrasky as a passenger in the car.  None of these decisions was made by Montgomery.  All of these decisions were made unilaterally by William Redford and Mr. Zebrasky.

After the accident and the UIM claim of Mr. Zebrasky, Montgomery was legally obligated to receive communications from Mr. Zebrasky concerning his claim while Mr. Zebrasky was located in Colorado.  Montgomery was legally obligated to direct

communications to Mr. Zebrasky in Colorado in the course of handling his insurance claim.  In these circumstances, communications from Montgomery to Mr. Zebrasky in Colorado do not constitute acts by which Montgomery made a decision to purposefully avail itself of the privilege of conducting activities in Colorado.  Rather, the necessity that Montgomery communicate with Mr. Zebrasky in Colorado was created solely by the choice of Mr. Redford to drive the insured car in Colorado, the choice of Mr. Zebrasky to be a passenger in the car, and the fortuitous event of the rear-end collision in Colorado.

This case is analogous to the circumstances presented in *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415 (10th Cir. 1988).  In *Rambo*, the plaintiffs filed claims for breach of contract and bad faith against their auto insurance carrier, American Southern Insurance Company, a Georgia corporation.  The insurance claim concerned a property damage claim relating to repairs to a truck owned by the plaintiffs and insured by American Southern.  The repairs were needed because the truck was stolen. The stolen truck was recovered, but was found to have been damaged. *Id*. at 1416.

The plaintiffs were residents of Alabama when the insurance contract was executed.  They were living in Texas when the truck was stolen. The truck was stolen in California.  After the truck was stolen and recovered and after the plaintiffs filed their insurance claim, the plaintiffs moved to Oklahoma.  Dissatisfied with the treatment of their claim by American Southern, the plaintiffs filed suit against American Southern in the United States District Court for the Western District of Oklahoma.  American Southern filed a motion to dismiss asserting a lack of personal jurisdiction in Oklahoma.

The United States Court of Appeals for the Tenth Circuit held American Southern was not subject to personal jurisdiction in Oklahoma. *Id*. at 1421.  There was no basis to find general jurisdiction. *Id*. at 1418.  The court found that the contacts American

Southern and its agent, Mid South Claim Services, made with the plaintiffs in Oklahoma concerning the insurance claim were not sufficient to support specific jurisdiction. *Id*. at 1421.  The court emphasized the need to show a defendant purposely availed itself of the privilege of conducting activities within the forum state. *Id*. at 1419.  The court found that none of the acts by American Southern or Mid South could be construed as purposeful contacts with Oklahoma. *Id*. at 1420.  "The Oklahoma contacts were fortuitous, resulting from the [plaintiff's] change of residence *after* the insurance policy was issued and the claim was filed." *Id*.

The fact that the car accident involving Mr. Zebrasky occurred in Colorado does not change the analysis.  The fact that the accident occurred in Colorado is not an act of Montgomery and does not show Montgomery purposefully availed itself of the privilege of conducting activities in Colorado.

In his response [#15], Mr. Zebrasky relies primarily on *Waterval v. District Court*, 620 P.2d 5 (Colo. 1980) and *Scheur v. District Court*, 684 P.2d 249 (Colo. 1984) to  support a finding of personal jurisdiction concerning Montgomery.  These cases are readily distinguishable from the present case.  Both *Waterval* and *Scheur* involved lawyers outside of Colorado who chose to maintain a client relationship with a client in Colorado.  In both cases, the clients filed suit against their lawyer in Colorado courts.  In both cases, the Colorado Supreme Court found the lawyers were subject to personal jurisdiction in Colorado.

In *Waterval*, the court found Waterval, a Virginia lawyer, established an attorney-client relationship with a Virginia client.  The client later moved to Colorado and Waterval "freely and deliberately chose to continue in Colorado an attorney-client relationship which originated in Virginia."  *Waterval*, 620 P.2d at 10.  The court noted

that the actions of Waterval were "not a single, isolated act, the effects of which occurred fortuitously" in Colorado.  *Id*.  "Nor was [Waterval's] contact with the forum state thrust upon him against his will."  *Id*.  The court held Waterval was subject to personal jurisdiction in Colorado.  *Id*. at 10-11.

In *Scheur*, the court found Scheur, who was located in New Mexico, "accepted employment as an attorney for a Colorado corporation" and took various actions as part of that representation.  *Scheur*, 684 P.2d at 251.  Via his decision to represent a Colorado client and his subsequent conduct, Scheur "purposely availed himself of the privilege of transacting business in Colorado."  *Id*. at 252.  The court held Scheur was subject to personal jurisdiction in Colorado.  *Id*.

The actions of the defendants in *Waterval* and *Scheur* reflected their conscious choice to conduct activities in Colorado, as opposed to the unilateral activity of another person and/or random or fortuitous events requiring Waterval and Scheur to have contact with Colorado.  In contrast, nothing in the record shows Montgomery ever took any action which reflects a choice by Montgomery to purposefully avail itself of the privilege of conducting activities in Colorado.  Rather, the requirement that Montgomery communicate with Mr. Zebrasky in Colorado was created by the unilateral activity of other people, Mr. Redford and Mr. Zebrasky, as well as the random or fortuitous event of a car accident.  These decisions of others and a fortuitous event, all outside the control of Montgomery, ultimately required Montgomery to deal with Mr. Zebrasky in Colorado.  Montgomery never purposefully availed itself of the privilege of conducting activities in Colorado.

**IV.  CONCLUSION & ORDERS**

9

Mr. Zebrasky has not met his burden of establishing personal jurisdiction over Montgomery. Nothing in the record indicates that Mr. Zebrasky could amend his complaint to show personal jurisdiction over Montgomery. The motion to dismiss [#14] must be granted.

**THEREFORE, IT IS ORDERED** as follows:

1. That under Fed. R. Civ. P. 12(b)(2), **Defendant Montgomery Mutual Insurance Company's Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed R. Civ. P. 12(b)(2)** [#14]  is granted;

2. That under Fed. R. Civ. P. 12(b)(2), this case is dismissed without prejudice for lack of personal jurisdiction over the defendant, Montgomery Mutual Insurance Company;

3. That judgment shall enter in favor of the defendant, Montgomery Mutual Insurance Company, and against the plaintiff, Jeff Zebrasky, stating that this case is dismissed without prejudice for lack of personal jurisdiction over the defendant, Montgomery Mutual Insurance Company; and

4. That this case is closed.

Dated August 31, 2023, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge